IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEREMY HOWARD BAD HAND,

    Plaintiff,

v.     No. 1:21-cv-00784-KG/GBW

THE COUNTY OF TAOS NEW MEXICO, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Board of County Commissioners of the County of Taos ("Taos County") and Joey Graves. (Doc. 12). Defendant Austin Barnes had not yet been served and did not participate in the Motion. *See* Summons (Doc. 17). Plaintiff Jeremy Howard Bad Hand, representing himself, responded and Defendants replied. (Docs. 13, 14). Having considered the briefing and the applicable law, the Court grants the Motion.

I.   *Background*

   A. *Factual Background*

This case arises out of Mr. Bad Hand's arrest and the subsequent impoundment and search of his truck. Ordinarily, on a Motion for Summary Judgment, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party and construe all evidence in the light most favorable to the nonmoving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55, (1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). That is particularly difficult here because the facts available are disproportionately provided by Defendants.

To illustrate the imbalance, the entirety of Mr. Bad Hand's relevant factual claim in the Second Amended Complaint is that "in 2020, Deputy Graves had executed a pre-warrant search, confiscating my own belongings" and "[m]y property was also confiscated… in 2020 most recently by pre-warrant search [and] belongings were claimed to be not mine." (Doc. 8) at 4, §§ II(D), III(C). And in his Response to the instant Motion, Mr. Bad Hand did not present any facts nor rebut any material facts briefed by Defendants, which results in deeming Defendants' facts undisputed.[1] *See* D.N.M.LR Civ 56.1(b).

On the other hand, Defendants present detailed material facts and attach supporting evidence to their Motion, including a declaration from Deputy Graves, (Doc. 12-1); a Taos Central Dispatch Call Detail Report from the incident in question, (Doc. 12-2); the first affidavit for a search warrant, (Doc. 12-3) at 1; the first search warrant, *id.* at 4; the second affidavit for a search warrant, *id.* at 5; the amended search warrant, *id.* at 7; a criminal information against Mr. Bad Hand, (Doc. 12-4); a global plea and disposition agreement, (Doc. 12-5); a state court Order Deferring Imposition of Sentence, (Doc. 12-6); and two evidence control forms documenting possessions seized and impounded, (Doc. 12-7). The Court, therefore, bases the following findings of fact primarily on the undisputed evidence presented by Defendants.

On March 27, 2020, at about 12:33 p.m., Michelle Gonzales called 911 in Taos to report that she had returned home to find her camper doors open and an agitated man walking away from her property carrying a .22 rifle. (Doc. 12) at 5, ¶ 3. Deputy Graves of the Taos County

---

[1] Mr. Bad Hand argues in his Response that lapel camera evidence would "indicate there is sufficient cause to deny defendants motion for summary judgment," (Doc. 13) at 2, ¶ 2, however, he does not attach the video and instead implies it was the Defendants' obligation to do so, *id.* at 4, ¶ 8. Without seeing it, the Court cannot consider lapel camera video as evidence, and given the weight of the evidence submitted by Defendants, the Court is persuaded that the searches were all constitutional, *see infra* Section II(A).

Sheriff's Department was on duty and dispatched to the area, where he came across a truck parked on the shoulder of the road. *Id.* at 5, ¶ 4. In the open bed of the truck, Deputy Graves observed two rifles which were partially uncovered. *Id.* Next, a man matching the description given by Ms. Gonzales approached the truck. *Id.* The approaching man turned out to be Mr. Bad Hand, who identified the truck as his mother's. *Id.* at 5, ¶ 5. Ms. Gonzales came to the scene of the truck and identified the two rifles as belonging to her husband. *Id.* at 5–6, ¶ 5.

At that point, Deputy Graves read Mr. Band Hand his *Miranda* rights and placed him under arrest. *Id.* at 6, ¶ 6. In addition, Deputy Graves impounded the truck and arranged to have it towed to a secure yard. *Id.* In the meantime, Deputy Graves sought and received a search warrant for the truck. *Id.* An initial search of the truck revealed a grey box which contained what appeared to be narcotics. *Id.* So, Deputy Graves sought and received from the court an amended search warrant to include the search and seizure of narcotics. *Id.* The search warrants authorized seizure of belongings and required inventorying any property seized. (Doc. 12-3) at 4, 7. Deputy Graves complied and indeed inventoried the property seized. (Doc. 12-7). All property received apparently remains in the evidence vault of the Taos County Sheriff's Office. (Doc. 12) at 7, ¶ 10.

B. *Procedural Background*

In his operative Second Amended Complaint, (Doc. 8), Mr. Bad Hand brings claims for civil rights violations against Officer Austin Barnes of the Taos Police Department in his personal and official capacity, Deputy Graves in his personal and official capacity, and Taos County. *Id.* at 2. Specifically, Mr. Bad Hand brought a claim under the New Mexico Civil Rights Act (CRA), NMSA § 41-4A-1 *et seq.*, alleging a violation of Article II Section 20 of the New Mexico Constitution and a claim under Section 1983, 42 U.S.C. § 1983, alleging violations

3

of the Civil Rights Act of 1964, and the 4th, 5th, 8th, 13th, and 14th Amendments. *Id.* at 3. As relief, Mr. Bad Hand seeks an apology from local police entities, the return of his seized belongings, compensation for possessions taken, and compensatory and punitive damages for civil rights violations. *Id.* at 5.

The Court dismissed most of Mr. Bad Hand's claims for failure to state a claim. (Doc. 9). Remaining are: (1) a claim under § 1983 alleging Fourth Amendment violations for unlawful seizure and excessive force against Officer Barnes in his individual capacity; (2) a claim under § 1983 alleging a Fourth Amendment violation for unlawful search against Deputy Graves in his individual capacity; and (3) a claim under the New Mexico Civil Rights Act against Taos County for Deputy Graves' alleged taking of Mr. Bad Hand's belongings during a pre-warrant search in violation of Article II Section 20 of the New Mexico Constitution.

Now, Taos County and Deputy Graves bring this Motion for Summary Judgment, which advances two main arguments. First, Deputy Graves argues he is entitled to qualified immunity. (Doc. 12) at 7–8. Second, Taos County argues that the CRA claim brought against it is barred because this case arose before the CRA was implemented. *Id.* at 8–9. The Court notes the second and third claims are implicated by this Motion, but the first is not and so it will persist.

II.     *Analysis*

   A.  *Mr. Graves is Entitled to Qualified Immunity*

Section 1983 of Title 42 authorizes a private cause of action against any person acting under color of state law for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. This case alleges violations of the Fourth Amendment, which protects the people and their belongings from warrantless searches and seizures.

Individual defendants named in a § 1983 action, however, "may raise a defense of qualified immunity, which shields public officials from damages actions." *Irizarry v. Yehia*, 38 F.4th 1282, 1287 (10th Cir. 2022) (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)). Qualified immunity is an "affirmative defense [that] creates a presumption that the defendant is immune from suit." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (quoting *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)). To overcome this presumption, the plaintiff bears a heavy burden to show both that "the defendant's actions violated a constitutional or statutory right" and that the "right was clearly established at the time of the defendant's complained-of conduct." *Irizarry*, 38 F.4th at 1287 (quoting *Truman*, 1 F.4th at 1235).

A plaintiff must overcome both prongs of qualified immunity—that they suffered a constitutional violation and that the specific type of violation was clearly established. The Court has discretion to address either prong first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, the Court concludes that Mr. Bad Hand fails to state a constitutional violation and fails to cite any cases that might plausibly establish a right which was violated here. Addressing only the first prong, Mr. Band Hand alleges that his property was seized during a pre-warrant search, in violation of the Fourth Amendment. (Doc. 8) at 4. The evidence presented weighs against this presentation of the facts, however. Prior to receipt of a warrant, Deputy Graves saw guns in plain view in the open bed of the truck and impounded the truck when arresting Mr. Bad Hand. (Doc. 12) at 5, ¶ 4. Later, the comprehensive search of the truck and seizure of its contents occurred under the authority of a warrant. (Doc. 12) at 6, ¶ 6; (Doc. 12-3) at 4,7. Each of these actions was permissible actions under the Constitution.

First, Deputy Graves' noticing the guns is permitted because the guns were in plain view. "One exception to the warrant requirement is the plain-view exception, which allows a law-enforcement officer to seize evidence of a crime without a warrant under a limited set of circumstances." *United States v. Johnson*, 43 F.4th 1100, 1110 (10th Cir. 2022) (citing *United States v. Angelos*, 433 F.3d 738, 747 (10th Cir. 2006)). The plain-view exception "applies if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent ... and (3) the officer had a lawful right of access to the object." *Id.* (internal quotation and citation omitted). Here, it seems apparent the truck was parked on a public roadway where Deputy Graves lawfully approached it, that Deputy Graves had a clear sightline of the guns without otherwise searching the truck, and based on the 911 call, Deputy Graves had good reason to suspect the guns were part of or the fruit of a crime.

Second, the impoundment of the truck was allowed under the community-caretaker exception. *See, e.g.*, *United States v. Trujillo*, 993 F.3d 859, 865–869 (10th Cir. 2021) (conducting comprehensive treatment of community caretaker exception and impoundment of vehicles). Courts often uphold impoundment of vehicles on public roadways, especially where the driver is arrested, and the owner cannot readily arrange for someone to drive it away. *Id.* at 864; *also id.* at 866 ("In the years since [*South Dakota v.*] *Opperman*[, 428 U.S. 364 (1976),] [the Tenth Circuit has] approved impoundments in a variety of community-caretaker contexts and, almost without exception, have upheld impoundment of vehicles pulled over on roadways."). In addition, once Deputy Graves saw the guns, their presence likely justified impoundment and/or search of the rest of the truck even without a warrant. *See United States. v. Johnson*, 734 F.2d 503, 505 (10th Cir. 1984) ("[Defendant]'s revolver in plain view clearly justified a search of the

6

rest of the automobile for other weapons."); *also Trujillo*, 993 F.3d at 868–869 (surveying law on community caretaker exception when guns in vehicle).

Third, the comprehensive searches of the truck and seizure of belongings and narcotics within it were all conducted under the authority of a lawful search warrant. This plainly comports with the Fourth Amendment.

Given Deputy Graves' showing that his searches and seizures were lawful, and Mr. Bad Hand's failure to refute that showing with any different facts, the Court determines Deputy Graves did not violate the Fourth Amendment. Because no clear constitutional violation is alleged, Deputy Graves is entitled to qualified immunity and summary judgment in his favor.

B. *The New Mexico Civil Rights Act Claim Against the County Fails*

The New Mexico Civil Rights Act creates a cause of action for violations of civil rights. NMSA 1978 § 41-4A-3. The March 2020 events alleged in this case, however, precede implementation of the CRA, which is not retroactive. "Claims arising solely from acts or omissions that occurred *prior to July 1, 2021* may not be brought pursuant to the New Mexico Civil Rights Act." § 41-4A-12 (emphasis added). Mr. Bad Hand's CRA claim against Taos County, therefore, is barred and must be dismissed with prejudice.

III.   *Conclusion*

The Court concludes that, because Mr. Bad Hand does not allege a constitutional violation, Deputy Graves is entitled to qualified immunity. The Court will separately enter summary judgment against Mr. Bad Hand and in favor of Deputy Graves. The Court additionally concludes that the alleged acts giving rise to the New Mexico Civil Rights Act claim against Taos County precede implementation of the CRA. The Court, therefore, dismisses that

claim with prejudice, and will also enter judgment for the Board of County Commissioners of the County of Taos.

    IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE